# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTHONY GILMER EPPERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12CR157-1 |
| | ) | 1:13CV784 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 31).[1] For the reasons that follow, the Court should deny the instant Section 2255 Motion.

### INTRODUCTION

The Court (per Senior United States District Judge N. Carlton Tilley, Jr.) previously entered judgment against Petitioner imposing, inter alia, a prison term of 250 months, after he pleaded guilty to sexually exploiting a minor to produce child pornography in violation of 18 U.S.C. § 2251(a) & (e). (Docket Entry 16; see also Docket Entry 1 (Indictment); Docket Entry 10 (Plea Agt.); Docket Entry 26 (Plea Hrg. Tr.); Docket Entry 27 (Sent'g Hrg.

---

[1] Parenthetical citations refer to Petitioner's criminal case.

Tr.).)[2] The United States Court of Appeals for the Fourth Circuit affirmed. United States v. Epperson, 538 F. App'x 364 (4th Cir. 2013). Petitioner then timely filed the instant Section 2255 Motion (Docket Entry 31),[3] which he later supplemented (Docket Entry 36).[4] The United States has responded (Docket Entry 37) and Petitioner has replied (Docket Entry 39).

DISCUSSION

Petitioner's instant Section 2255 Motion presents these five grounds for relief:

1) "[t]hat this case was prejudiced against [Petitioner] from its inception by law enforcement coercion, perjury by law

---

[2] The Factual Basis filed in support of Petitioner's guilty plea states that law enforcement officers executing a firearms-related search warrant at his residence "located items that were consistent with child pornography." (Docket Entry 9 at 1-2.) They "applied for and received a second search warrant allowing them to search for items related to the presence of child pornography [and] . . . located additional images as well as other recordings of suspected child pornography." (Id. at 2.) Petitioner "admitted taking sexually explicit photos and videos of a juvenile . . . . The juvenile . . . confirmed the production of the videos . . . ." (Id. at 3.) Petitioner conceded the accuracy of the foregoing portions of the Factual Basis. (Docket Entry 26 at 23-24.)

[3] The instant Section 2255 Motion consists not only of the standard form for such motions (as well as additional pages used to present a fifth claim for which the standard form did not provide space), but also various of Petitioner's (post-conviction) medical records from July 2013. (See Docket Entry 31.)

[4] An attached letter describes the supplemental documents as "hospital reports . . . from a 'second' heart surgery in October, 2013 – which followed the surgery of July, 2013, which [the Court] already ha[s] reports from." (Docket Entry 36 at 1.)

2

enforcement officers, and conspiracy by law enforcement officers" (Docket Entry 31, ¶ 12(Ground One));[5]

2) "[t]hat it appears [a federal agent] conspired with [two local detectives] in violation of 18 US Code, and falsified/changed [Petitioner's] hand written statement, and perjury [was committed] by a [federal] agent" (id., ¶ 12(Ground Two));

3) "[i]neffective counsel . . . [due to a] failure to object to full allocution [and a] failure to pursue possible 'downward' departure to obtain a reduced sentence" (id., ¶ 12(Ground Three));

4) "[i]neffectiveness of U.S. Probation Officer . . . [by failing] to provide [the] Court and all parties with unbiased PSI [Presentence Investigation] Report to allow [the Court] to make a fully briefed, and fair/compassionate judgement that could have resulted in a lower sentence" (id., ¶ 12(Ground Four)); and

5) "[l]ack of counsel and system to address prior medical/ psychological issues, and current medical problems that could qualify for relief under 18 USC 4205(g) or 18 USC 3582(c)(1)(A)" (id., ¶ 12(Ground Five)).

Grounds One and Two: Law Enforcement Misconduct

Grounds One and Two of the instant Section 2255 Motion seek relief based on alleged misconduct by two detectives with the Surry

---

[5] Petitioner's filings do not follow standard capitalization conventions, but (for ease of reading) this Memorandum Opinion employs such conventions when quoting Petitioner's filings.

3

County Sheriff's Office ("SCSO") and a federal agent.  (See id., ¶ 12(Ground One) & (Ground Two).)  According to the "[s]upporting facts" as to Ground One, the two SCSO detectives "'broke the law, in attempt to serve the law'" by "conspir[ing] to falsify 3 charges of Being in Possession of Weapons of Mass Death and Destruction, to obtain a high bond to keep [Petitioner] in custody, even after the responding bomb squad/EOD unit from Forsyth County, N.C. disclosed to said detectives that the 3 recovered grenades were 'inactive.'"  (Id., ¶ 12(Ground One)(a); see also id. (alleging that Petitioner and federal agent witnessed foregoing disclosure and "that both [d]etectives violated NC General Statutes and possibly violated Title 18, US Code").)  The "[s]upporting facts" for Ground One also state that the federal agent "was later coerced to have this case transferred to federal jurisdiction."  (Id.)

Ground Two's "[s]upporting facts" allege that the federal agent "conspired with [the two SCSO detectives] when he 'changed' the wording in [Petitioner's] hand written statement when it was typed, by 'adding' statements that [Petitioner] did not make, to help fabricate information that [Petitioner] had done and admitted to something that [Petitioner] did not do."  (Id., ¶ 12(Ground Two)(a); see also id. ("[T]his case was taken to grand jury by [the federal agent], only after several months of being coerced by [the two SCSO detectives] and then [the federal agent] typed [Petitioner's] statements to imply guilt on [Petitioner's]

4

part.").) Finally, the "[s]upporting facts" pertaining to Ground Two assert that, although the federal agent "read [Petitioner his] 'Miranda Rights' before [Petitioner] made [his] statement, [that action only occurred] after [Petitioner] had been arrested by [the SCSO] and [the two SCSO detectives] never read [Petitioner his] rights, even after coercion and [Petitioner] had turned over evidence later used against [him]." (Id.)

Notwithstanding the foregoing allegations, the record confirms that Petitioner entered a voluntary and knowing guilty plea pursuant to a written Plea Agreement and a properly-conducted judicial colloquy. (See Docket Entries 10, 26.)[6] That fact dooms Grounds One and Two, as well-explained by another court in this Circuit in relation to an analogous claim:

> If [the p]etitioner honestly believed that the indictment was based upon the lies of [law enforcement officers], he was entitled to a trial, where he could have tested the merits of such an argument and the credibility of his accusers. [The p]etitioner's plea acts as an acceptance

---

[6] Petitioner has not challenged his guilty plea. (See Docket Entries 31, 39.) Nor do Grounds One or Two allege that Petitioner: 1) reported misconduct by law enforcement officials; or 2) asked his trial-level counsel to move to dismiss the charges and/or to suppress any evidence. (See Docket Entry 31, ¶ 12(Ground One)(a) & (Ground Two)(a); see also id., ¶ 13 (acknowledging that Petitioner "ha[d] not previously presented" the claims set forth in Grounds One and Two and failing to attribute that fact to ineffective assistance by trial-level counsel (emphasis in original)).) Moreover, although Ground Three asserts a claim for ineffective assistance by trial-level counsel, it contains no complaint about: 1) the lack of any pre-plea motion to dismiss and/or to suppress; or 2) the advice Petitioner received about pleading guilty. (See id., ¶ 12(Ground Three).)

5

> of their credibility, and collateral review of the matter is simply an inappropriate forum to review [the p]etitioner's willing acceptance of the charges.

Stroupe v. United States, 664 F. Supp. 2d 598, 608 (D.S.C. 2009); see also Tollett v. Henderson, 411 U.S. 258, 267-68 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases]."); United States v. Ochsner, Crim. No. 89-220, 1992 WL 6279, at *1 (E.D.La. Jan. 6, 1992) (unpublished) ("[The petitioner] cannot, after entering a guilty plea, challenge the evidence upon which the indictment against him rested. As reflected by the guilty plea transcript [the petitioner] voluntarily admitted his guilt. His claims based on falsified information must fail.").

Grounds One and Two thus provide no basis for relief.

### Ground Three: Ineffective Assistance of Counsel

As to Ground Three, Petitioner has identified these "[s]upporting facts" for his contention that his trial-level counsel provided ineffective assistance:

6

1) "fail[ure] to object to the lack of full allocution after [the Court] interrupted [Petitioner's] remarks [at sentencing]" (Docket Entry 31, ¶ 12(Ground Three)(a));

2) "fail[ure] to argue/pursue [objection that] items were misrepresented in the PSI Report" (id.); and

3) "fail[ure] to argue or pursue downward departures under 18 USC 3553 Sections 5H1.1, 5H1.6, 5H1.11, 5K1.1, and 5K2.13" (id.).[7]

---

[7] Ground Three also generally asserts that Petitioner's trial-level counsel rendered ineffective assistance "in violation of Rule 1.7(a)(2) of NC Rules of Professional Conduct . . . ." (Docket Entry 31, ¶ 12(Ground Three).) The "[s]upporting facts" for Ground Three, in turn, allege that "[i]t was even stated in a letter from Louis C. Allen III, Federal Public Defender, dated 15 January, 2013 to the 4th Circuit Court of Appeals, that 'there appeared to be a violation of Rule 1.7(a)(2) of the N.C. Rules of Professional Conduct' . . . ." (Id., ¶ 12(Ground Three)(a).) In fact, on January 15, 2013, Petitioner's trial-level counsel (an Assistant Federal Public Defender in Mr. Allen's Office) filed a motion with the Fourth Circuit stating that Petitioner (via letter) had "questioned various aspects of [said] counsel's performance, and requested an alternate attorney be assigned to his case, to handle his appeal." Mot. to Withdraw, United States v. Epperson, No. 12-5050, ¶ 2 (4th Cir. Jan. 15, 2013) (internal brackets and quotation marks omitted). As a result, Petitioner's trial-level counsel moved to withdraw based on his "considered opinion that the contents of [Petitioner's] letter g[a]ve rise to a conflict within the meaning of Rule 1.7(a)(2) of the North Carolina Rules of Professional Conduct." Id., ¶ 3; see also United States v. Epperson, No. 12-5050 (4th Cir. Jan. 17, 2013) (unpublished) (allowing withdrawal and appointing new counsel). The cited rule provides that, in general, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . the representation of one or more clients may be materially limited . . . by a personal interest of the lawyer." N.C.R. Prof'l Conduct 1.7(a)(2). The relevant commentary further states that, "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give
(continued...)

7

The first of these three allegations cannot support an ineffective assistance claim because, on direct appeal, Petitioner "contend[ed] that he was denied allocution . . . . [However, f]inding no error, [the Fourth Circuit] affirm[ed]." Epperson, 538 F. App'x at 364. In particular, the Fourth Circuit concluded that "[Petitioner] was provided an opportunity to allocute and that he had ample opportunity to bring mitigating information to the [C]ourt's attention. While the [C]ourt asked [Petitioner] questions in an effort to understand his statements, [the Fourth Circuit] f[ou]nd no error." Id. at 365.[8] As a result, Petitioner cannot show ineffective assistance due to his trial-level counsel refraining from objecting to the Court's handling of the allocution process. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to

---

[7](...continued)
a client detached advice." N.C.R. Prof'l Conduct 1.7, comment n.10. In other words: 1) Petitioner complained in writing to his trial-level counsel about the quality of the representation rendered to that point and requested new counsel on appeal; 2) Petitioner's trial-level counsel reasonably concluded that Petitioner's action in that regard created a conflict of interest under the applicable professional conduct rules; and 3) Petitioner's trial-level counsel properly moved to withdraw in light of the conflict Petitioner had created. These circumstances do not establish a claim for ineffective assistance of counsel.

[8] The Fourth Circuit stated that "[b]ecause [Petitioner] did not object regarding allocution . . . any error [wa]s subject to review only for plain error." Epperson, 538 F. App'x at 364-65. However, the Fourth Circuit effectively ruled directly on the merits of the allocution issue, by finding no error at step one of the plain error test (without relying on the other steps). See id.

[take action if] . . . it would have been futile for counsel to have done so . . . ."); see also Strickland v. Washington, 466 U.S. 668, 687-94 (1984) (holding that ineffective assistance claims require proof that counsel's performance fell below reasonable standard for defense attorneys and that prejudice resulted); Torres v. United States, Nos. 1:06CR255, 1:09CV226, 2010 WL 2342462, at *3 (W.D.N.C. June 8, 2010) (unpublished) ("While [the p]etitioner raises his present claim under the rubric of ineffective assistance of counsel, because he challenged precisely the same underlying conduct on appeal and the challenge was rejected, [the p]etitioner, at a minimum, cannot establish that he was prejudiced."), appeal dismissed, 397 F. App'x 913 (4th Cir. 2010).

In connection with the second (above-quoted) allegation of ineffective assistance, Petitioner neither has described any "misrepresented" items in the PSI Report nor has shown how any objection to any such items by his trial-level counsel would have altered the outcome of the case. (See Docket Entry 31, ¶ 12(Ground Three)(a); Docket Entry 39 at 1-5.) Simply put, this "claim is vague, conclusory, speculative, and unsupported and fails for all these reasons." Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, Jr., C.J.); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of

9

without further investigation by the [d]istrict [c]ourt." (internal quotation marks omitted)); Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) ("[The p]etitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis.") (Dietrich, M.J.), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.).

Petitioner's third ineffective assistance claim (i.e., that his trial-level counsel should have sought certain downward departures at sentencing) also falls short. As an initial matter, on direct appeal, the Fourth Circuit "conclude[d] that [Petitioner's] sentence [wa]s substantively reasonable . . . and supported by the totality of the circumstances, including [his] history and characteristics, the nature of the offense and the need to protect the public." Epperson, 538 F. App'x at 365. That conclusion effectively vindicates the decision of Petitioner's trial-level counsel "not [to] argue for a downward departure under Sections 5H1.1, 5H1.6, 5H1.11, 5K1.1 or 5K2.13 of the Sentencing Guidelines because [he] d[id] not believe there was a meritorious basis for doing so" (Docket Entry 37-1 at 3).[9]

---

[9] The Guidelines sections cited by Petitioner concern "Age," U.S.S.G. § 5H1.1, "Family Ties and Responsibilities," U.S.S.G. § 5H1.6, "Military, Civic, Charitable, or Public Service; Employment-Related Contributions; Record of Prior Good Works," U.S.S.G. § 5H1.11, "Substantial Assistance to Authorities,"
(continued...)

10

In any event, Petitioner has failed to show facts that would tend to establish any possibility that the Court would have imposed less imprisonment if his trial-level counsel had raised the cited departure arguments. (See Docket Entry 31, ¶ 12(Ground Three)(a); Docket Entry 39 at 1-5.) Nor could Petitioner plausibly make any

---

[9](...continued)
U.S.S.G. § 5K1.1, and "Diminished Capacity," U.S.S.G. § 5K2.13. Review of these grounds confirms the soundness of the choice by Petitioner's trial-level counsel not to seek a departure or variance based on them. For example, at sentencing, the Court explicitly considered Petitioner's age, but deemed that factor insufficient to justify a prison term below 250 months. (See Docket Entry 27 at 26.) Nor would Petitioner's family ties have warranted any reduction, given: 1) his offense of conviction (which falls within Chapter 110 of Title 18 of the United States Code, see 18 U.S.C. § 2251(a)), see U.S.S.G. § 5H1.6 ("In sentencing a defendant convicted of . . . an offense under chapter . . . 110 . . . of title 18, United States Code, family ties . . . are not relevant in determining whether a sentence should be below the applicable guideline range."); and 2) the fact that, at the time of his sentencing, he was "largely estranged from his family" (Docket Entry 27 at 14). Likewise, "[c]ivic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11. Further, although "[m]ilitary service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines," id., Petitioner's military record does not cry out for leniency (see Docket Entry 27 at 12 (indicating that Petitioner's uniformed service "ended with a court-martial . . . and bad conduct [discharge]" due to his "stealing from the Government and selling [the stolen property]"). Next, a reduction for substantial assistance to law enforcement requires a motion by the United States, see U.S.S.G. § 5K1.1, but (as Petitioner's trial-level counsel observed) the United States filed "no motion for such a departure" (Docket Entry 37-1 at 3). Finally, the diminished capacity guideline excludes departures for defendants (like Petitioner) "convicted of an offense under chapter . . . 110 . . . of title 18, United States Code." U.S.S.G. § 5K2.13.

11

such showing, given the Court's definitive comments about the need for a prison term of at least 250 months (see Docket Entry 27 at 26 ("[T]he only thing that prevents me from going to the top end of the guideline range is [Petitioner's] age. . . . [C]onsidering his insensitivity to others, his lack of respect for others, his inability to foresee the consequences of his conduct, his willingness or compulsion to acquire weapons and ammunition, I find no sentence less than 250 months is sufficient to address those considerations under [Section] 3553(a).")).[10] Accordingly, the Court should reject this aspect of Ground Three for want of prejudice. See, e.g., Burton v. United States, Civ. Action No. 12-0342-CG, Crim. Action No. 10-179-CG-N, 2014 WL 2435607, at *14 (S.D. Ala. May 29, 2014) (unpublished) ("[W]ishing that [counsel] had argued . . . that certain variables warranted a downward departure for [the petitioner] is not the same as showing *Strickland* prejudice . . . . [The petitioner's] variance argument fails because [she] has not shown that the sentence imposed would reasonably likely have been different had counsel requested a variance pursuant to § 3553." (internal quotation marks omitted)).

In sum, Ground Three lacks merit.

---

[10] Petitioner's trial-level counsel had argued "that anything more than the low end of th[e] advisory guideline range [of 210 to 262 months in prison] would be greater than necessary within the meaning of [Section] 3553(a), and that even the statutory mandatory minimum [under Section 2251(e)], which is 15 years, could be sufficient." (Docket Entry 27 at 7; accord id. at 18.)

12

## Ground Four: Inadequate Presentence Report

Ground Four challenges the adequacy of Petitioner's PSI Report. (Docket Entry 31, ¶ 12(Ground Four).) For "[s]upporting facts" regarding Ground Four, the instant Section 2255 Motion lists these three alleged shortcomings in the preparation of that PSI Report by the assigned United States Probation Officer:

1) she "failed to request/obtain medical/psychological records from the Veterans Administration and other medical facilities to disclose medical/psychological disabilities" (id., ¶ 12(Ground Four)(a));

2) she "prejudiced the PSI Report by 'tilting' the reported evidence towards guilt by reporting that [Petitioner] had marked ex-police type vehicles, when in reality, the light bars had 'green and white' lights for safety use and had been approved by the Mt. Airy Police Department, [by] fail[ing] to show that the reported 'radio racks' in the vehicles were authorized by several FCC radio licenses [Petitioner] hold[s], and [by] fail[ing] to report that the vehicles were used during 'several thousand' hours of volunteer community service for the Mt. Airy Police Department and Millennium Charter Academy by placing [Petitioner's] life on the line, twice on a daily basis by performing the duties of a traffic controller" (id.); and

3) "[s]he failed also to show in the PSI Report that no evidence, other than the physical evidence [Petitioner] provided,

13

was provided . . . [and that r]eports from computer labs showed that NO items of this type were ever uploaded or downloaded to any of [Petitioner's] computers, and no 'intent' was ever shown, only the photos/DVDs which were obtained by [Petitioner's] cooperation, even though [he] was never read [his] Miranda rights by [SCSO] detectives before, or after [his] arrest" (id. (emphasis in original)).

"The language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review. The Supreme Court has instructed that only those errors presenting a 'fundamental defect which inherently results in a complete miscarriage of justice' are cognizable." United States v. Foote, 784 F.3d 931, 932 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)); see also id. at 943-44 (holding that attack on "career offender designation [that] increased dramatically [the petitioner's] advisory Guidelines range" did not state cognizable claim under Section 2255). Even if (consistent with Ground Four's above-quoted allegations) the Court assumes the Probation Officer who prepared Petitioner's PSI Report (1) should have sought access to additional medical/psychological records, (2) should have included more information about Petitioner's vehicles and the use he made of them, and (3) should have characterized the evidence differently, Petitioner has not shown (and, indeed, cannot

14

show) a resulting sentencing error of such fundamental magnitude as to constitute a complete miscarriage of justice.

In that regard, Petitioner has not alleged that any of the supposed deficiencies in his PSI Report affected his advisory Guidelines imprisonment range. (See Docket Entry 31, ¶ 12(Ground Four); Docket Entry 39 at 1-5.) Moreover, the Court imposed a sentence within that range, which (as the Fourth Circuit observed on direct appeal) was "presumptively reasonable." Epperson, 538 F. App'x at 365. Under such circumstances, Ground Four does not present a cognizable collateral claim. See generally Foote, 784 F.3d at 940-43 (concluding that errant "career offender designation was not a fundamental defect that inherently results in a complete miscarriage of justice," inter alia, because "miscarriages of justice in the post-conviction context are grounded in the notion of actual innocence," because the Supreme Court "has yet to stretch [actual innocence] concept[s] to non-capital sentencing," because the mere existence of a "risk of prejudice or harm [does not] rise[] to the level of a fundamental defect resulting in a complete miscarriage of justice," and because a "sentence [that] did not exceed the statutory maximum . . . does not rise to the level of a fundamental defect" (internal quotation marks omitted)).[11]

---

[11] Alternatively, Ground Four's three (above-quoted) objections to Petitioner's PSI Report lack merit. First, the record reflects that the Probation Officer attempted to obtain Petitioner's records
(continued...)

## Ground Five: Section 4205(g) or Section 3582(c)(1)(A) Relief

Via Ground Five, Petitioner contends that with proper consideration of his "prior medical/psychological issues, and

---

[11](...continued)
from the Veterans Administration. (Docket Entry 27 at 30-31.) Second, including information in the PSI Report indicating that Petitioner specially outfitted vehicles with light bars (whatever the color) and radios (that require FCC licensing) so he could serve as a traffic control volunteer <u>at a school</u> (i.e., around children) would not have improved his posture at sentencing, given that his offense conduct involved (A) inducing "a child between eight and 12 years old [to] masturbat[e] for him to film, touching her, [and] spending weekend after weekend with her over years" and (B) represented "a repeat situation . . . [as previously] he had taken pictures of a 15 year old who later married him at 16." (<u>Id.</u> at 25; <u>see also</u> <u>id.</u> at 26 (taking note of Petitioner's "statement [that he] kn[e]w [the victim] was eight years old when [he] took photos [of her and that he] was hoping that when she got older [he] would marry her and she would take care of [him]").) Third, this case did not arise as a result of some sort of voluntary disclosure by Petitioner, but instead largely stemmed from discoveries made by law enforcement officers executing search warrants, as well as corroborating statements from the minor victim (<u>see</u> Docket Entry 9 at 1-2); moreover, the fact that Petitioner had not disseminated via computer the child pornography he produced fails to diminish the grievous harm he nonetheless did to the minor victim, <u>see, e.g.</u>, <u>United States v. Vanhorn</u>, 740 F.3d 1166, 1169 (8th Cir. 2014) ("[T]he creation and production of child pornography [] psychologically damages the minor victim."); <u>United States v. Irey</u>, 612 F.3d 1160, 1208 (11th Cir. 2010) (en banc) ("When child pornography is produced in conjunction with the sexual abuse of children, . . . the harm to the child victims is magnified and perpetuated."); <u>United States v. Norris</u>, 159 F.3d 926, 930 (5th Cir. 1998) ("[T]he mere existence of child pornography represents an invasion of the privacy of the child depicted."). As a final matter, to the extent Ground Four asserts that the Probation Officer participated in a "conspiracy" with law enforcement officials and Petitioner's trial-level counsel to subvert the sentencing process by ensuring that the Court "was not presented with all the evidence" (Docket Entry 31, ¶ 12(Ground Four)(a)), that "claim is vague, conclusory, speculative, and unsupported and fails for all these reasons," <u>Cabrera</u>, 2014 WL 6386902, at *9.

current medical problems [he] could qualify for relief under 18 USC 4205(g) or 18 USC 3582(c)(1)(A)." (Docket Entry 31, ¶ 12(Ground Five).) The "[s]upporting facts" for Ground Five describe Petitioner's disability ratings with the Veterans Administration, an allegedly mis-diagnosed health incident during his pretrial detention, and post-judgment medical treatment he received. (See id., ¶ 12(Ground Five)(a).) Petitioner then requests "clemency" in the form of "home release." (Id.; see also Docket Entry 39 at 4 (reporting further health problems and "ask[ing] for clemency, to spend [his] remaining life at home," where he "could 'easily' be monitored in a 'home arrest' situation with GPS").)

Ground Five fails for three simple reasons. First, "Congress repealed [S]ection 4205(g) in the Sentencing Reform Act of 1984 ('SRA') . . . . The SRA replaced [S]ection 4205(g) with [S]ection 3582(c), which became effective on November 1, 1987 . . . [as] to offenses occurring after [that date]." Sims v. Holenchik, No. CV09-0978-RGK(MLG), 2009 WL 1505175, at *2 (C.D. Cal. May 22, 2009) (unpublished). Second, Section 3582(c)(1)(A) "is clear that a reduction pursuant to this provision may only be granted upon motion of the Director of the Bureau of Prisons. Since no such motion has been made in this case, [the request for release should] be denied." United States v. Morrison, No. 5:99CR70, 2009 WL 1625299, at *1 (W.D.N.C. June 8, 2009) (unpublished) (internal citation, emphasis, and quotation marks omitted). Third,

17

"[c]lemency is the function of the Executive." Sorrells v. United States, 287 U.S. 435, 449 (1932); see also United States v. Williams, No. 0:12-197-CMC, 2014 WL 6749095, at *3 (D.S.C. Dec. 1, 2014) (unpublished) ("[The d]efendant's fourth claim for relief is that the court should grant him clemency. Under the Constitution, the President has the authority to commute, or reduce, a sentence imposed upon conviction of a federal offense, including for convictions adjudicated in the United States District Courts. U.S. Const. art. II, § 2, cl. 3. Accordingly, this ground for relief is without merit . . . ."); United States v. Lee, 382 F. Supp. 292, 294 (S.D.W. Va. 1974) ("Trial courts may not trespass on the territory of executive clemency or rewrite rules and statutes which control the courts' exercise of powers and functions.").

## CONCLUSION

Petitioner's claims do not warrant collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 31), as supplemented (Docket Entry 36), be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
September 18, 2015